UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Northern Division

UNITED STATES OF AMERICA,

        Plaintiff,

    - against –

                                            Civil No. 13-cv-03778-JKB

$122,640.00 in U.S. Currency,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

      The United States of America, by its counsel, files this opposition to Claimant Samantha Banks' Motion to Quash the deposition of Ted Cox. In support of this opposition, the Government says the following.

**Summary of the Argument**

      The Government has noticed the deposition of Ted Cox, a former supervisor of the K-9 unit of the Maryland Transportation Authority Police (MTAP). In addition, the Government seeks to contact Mr. Cox to interview him regarding the facts of this case in advance of the deposition.

      Claimant opposes the taking of the deposition and has moved to quash it on the grounds that Mr. Cox's testimony is irrelevant and that it would be burdensome for her counsel to participate in the deposition. Also, by designating Mr. Cox as an expert witness, Claimant has sought to prevent the Government from having any contact with him without the permission of her counsel.

1

Claimant's opposition to the taking of the deposition on the ground that it is irrelevant reflects a misunderstanding of the role of expert witnesses in currency seizure cases, and of the role that Mr. Cox played in this particular case.   Mr. Cox's testimony is discoverable because he is a fact witness with personal knowledge of material facts.   Moreover, given Mr. Cox's role in this case, Claimant's attempt to preclude the Government from having any contact with Mr. Cox without the consent of her counsel is indefensible.

Mr. Cox has personal knowledge of the training, certification and reliability of K-9 Falco - issues which must be addressed to establish the probative value of the dog's positive alert to the defendant's currency whether or not either party plans to call any expert witnesses. Moreover, given his intimate knowledge of the training and certification procedures in the K-9 unit at MTAP and his personal knowledge of the training provided to both Falco and his handler, Mr. Cox's testimony is also relevant to Claimant's accusation, as set forth in her Motion to Dismiss, that officers in MTAP attempted to fabricate a document to perpetrate a fraud on the court. Accordingly, the Government has every right to take his deposition with respect to both of these matters.

Finally, having publicly questioned the integrity of the law enforcement officers assigned to MTAP, and having attempted to cast a stain on the reputations of the prosecutors assigned to the case, it is unconscionable for Claimant to use the device of designating Mr. Cox as an expert witness to prevent the Government

from interviewing him as to his knowledge of the facts without the consent of her

counsel, or to suggest that a deposition should be barred because it would be

inconvenient for her counsel to attend.

For these reasons, the court should deny the motion to quash and should

permit the Government to interview the witness with or without the consent of

Claimant's counsel.

**Background**

This case involves $122,640 that was seized from Jerry Lee Banks at BWI

Airport on September 12, 2013. As is typical in currency seizure cases, the

Government will rely primarily on the following factors to establish the forfeitability

of the defendant currency: the quantity of the currency, the manner in which it was

packaged, the travel itinerary of the person from whom the currency was seized,

the claimant's false and inconsistent statements, her lack of a source of legitimate

income sufficient to explain her ownership of the currency, and her implausible and

wholly uncorroborated explanation for the facts leading up to the seizure.[1]

In addition to those factors, the Government may rely on the positive alert by

a trained drug dog, K-9 Falco, who was brought in by his handler, Cpl. J. Lambert,

to examine the defendant currency after it was seized. The probative value of a

---

[1] The cases citing these and other factors are legion.   *See, e.g., United States v. $252,300.00 in U.S. Currency*, 484 F.3d 1271, 1274-75 (10th Cir. 2007); *United States v. $124,700 in U.S. Currency*, 458 F.3d 822, 826 (8th Cir. 2006); *United States v. $30,670 in U.S. Funds*, 403 F.3d 448, 467-68 (7th Cir. 2005); *United States v. $84,615 in U.S. Currency*, 379 F.3d 496, 501-02 (8th Cir. 2004).

positive alert by a properly trained and certified K-9 is well established. *See United States v. $30,670 in U.S. Funds*, 403 F.3d 448, 462 (7th Cir. 2005) (in light of scientific evidence of the reliability of an alert by a properly trained drug dog, the dog's "alert to currency should be entitled to probative weight"; older cases deprecating value of the dog alert are unpersuasive); *United States v. $2,000,000 in U.S. Currency,* 906 F. Supp.2d 1260, 1264 (M.D. Fla. 2012) (a positive dog alert is "an important piece of evidence that unquestionably bolsters the Government's case for forfeiture"), quoting *United States v. $183,791.00 in U.S. Currency,* 2009 WL 2957276, *6 (N.D. Ga. Sept. 15, 2009); *United States v. $50,720.00 in U.S. Currency,* 589 F. Supp.2d 582, 584 (E.D.N.C. 2008) (following *$30,670*; dog alerts to currency are reliable because a detectable odor ordinarily remains on currency for only a brief time following contact with narcotics); *United States v. $20,330.00 in U.S. Currency*, 2006 WL 1185294, *5 (D. Col. 2006) (following *$30,670*; in accordance with the more recent cases based on the scientific evidence, a positive dog sniff has probative value). For the Government to rely on the positive alert by a drug dog in a particular case, however, it must establish that the *particular dog* was properly trained, certified, and reliable. As discussed below, this is a question of fact that may be established through written records as well as the testimony of the persons who trained and supervised the training of the dog and its handler.

Ted Cox was a K-9 trainer with the Maryland Transportation Authority Police

(MTAP) from 2007 to 2012.[2]   During that time, he oversaw the administration and

training of the K-9 units and was responsible for the annual recertification of all of

the K-9 teams and for maintaining accurate training records.[3]   In 2009, he worked

closely with Falco's handler, Cpl. Lambert, as he was trained with another dog, K-9

Keegan, and certified the results of that training.[4]   Later, he supervised the

training of K-9 Falco with his first handler, Off. Tony Dix.[5]

Claimant is challenging the probative value of Falco's alert on the ground

that his training and certification were deficient. Given his background and

personal contact with both the dog and its handler and his familiarity with the

training records, it is apparent that Ted Cox possesses first-hand knowledge of

facts that are material to determining the merits of Claimant's challenge. He is

familiar with the training methods employed in the K-9 unit at MTAP, the records

kept by that unit, the training provided to Falco's handler when he was trained with

with another dog, and with the training of Falco himself with another handler. He

may also have first-hand knowledge of the training provided to Cpl. Lambert and

---

2 The information regarding the experience and personal knowledge of Ted Cox is taken
from the resume proved by the Claimant on July 7, 2014 (Exhibit A), the statement of Cpl.
J. Lambert dated June 10, 2014 (Exhibit B), and excerpts from the deposition testimony of
Michael McNerney dated July 9, 2014 (Exhibit C).

3 Brown Letter dated July 7, 2014 attaching Cox resume. (Ex. A)

4 Memo from Lambert to Hoyer dated June 10, 2014. (Ex. B)

5 McNerney Deposition at 19. (Ex. C)

Falco once they were joined as a team.[6] Accordingly, the Government believes that Mr. Cox is a material fact witness and so desires to interview him and take his deposition.

As the Government has previously advised the court, *see* Motion for Extension of Time to Respond to Motion to Quash and for Other Relief at 1-2 (ECF 18), the Government attempted to contact Mr. Cox for the purpose of setting up his deposition in July. Claimant's counsel responded that because Mr. Cox was "[his] expert," no communication could occur between the Government and Mr. Cox without counsel's consent (ECF 18-1). *See also* Response to Government's Motion for Extension of Time (ECF 20), citing the law barring contact with an opposing party's expert witness. In its Order of August 4, 2014 (ECF 19), the court denied "without prejudice" the Government's request for an instruction permitting it to contact Mr. Cox directly, and suggested that the Government could seek the leave of the court permitting such contact. The Government is seeking such leave at this time.

**Argument**

The Government seeks to depose Ted Cox for two reasons: he is a fact witness with personal knowledge of the training, certification and reliability of K-9

---

6  It is unclear from the record thus far if Mr. Cox was still at MTAP when K-9 Falco was transferred from Off. Dix to Cpl. Lambert. That is one of the issues the Government has been unable to explore given Claimant's refusal to permit Government counsel to interview Mr. Cox.

Falco and he has personal knowledge of the facts relating to Claimant's accusation, as set forth in her motion to dismiss, that the Government breached its duty of candor. Claimant seeks to prevent the Government from deposing Mr. Cox for either reason.

### A. The Government Has the Right to Depose Ted Cox as a Fact Witness

Claimant argues that Mr. Cox's testimony is irrelevant because his only role in this case would have been to serve as Claimant's expert witness in the event the Government called an expert of its own. She says that because the Government is not relying on expert testimony, Cox has no role to play, and thus may not be deposed. Motion to Quash at 3 & n.3, 5.

Claimant is mistaken for two reasons: She assumes incorrectly that the Government needs to rely on expert testimony to establish the probative value of a positive dog alert in a civil forfeiture case; and she assumes, again incorrectly, that Mr. Cox's only role is to give expert testimony. To the contrary, the probative value of a positive dog alert turns not on the testimony of expert witnesses but on the training, certification, and reliability of the particular dog --- all questions of fact that may be established through fact witnesses; and Ted Cox, as a former trainer and supervisor involved in the training of K-9 Falco, is a fact witness with personal knowledge of the facts of this case.

Thus, there is no reason why the Government's decision to proceed without an expert witness should preclude the taking of the deposition of Mr. Cox.

**1. The Government need not rely on expert testimony to establish the probative value of a dog alert**

Claimant's argument is premised on the assumption that the probative value of a positive dog alert can be established only through the testimony of an expert witness. That assumption is not correct.

To be sure, many civil forfeiture cases have involved expert testimony regarding the probative value of a positive dog alert. For example, if the claimant asserts that a positive alert even by a properly trained dog has no probative value because all of the currency in circulation in the United States is contaminated (what is generally called the "contamination theory"), the Government may call experts to debunk that theory with scientific evidence that a properly trained drug dog alerts not to any background contamination on currency in circulation but to volatile by-products that are detectable only in the brief interval after the currency is exposed to cocaine.   *See, e.g., United States v. $30,670 in U.S. Funds,* 403 F.3d 448, 462 (7th Cir. 2005) (scientific evidence establishes that dogs do not alert to the smell of cocaine but only to the smell of methyl benzoate, a volatile byproduct; thus, dogs do not alert to tainted currency in general circulation but only to currency that "has been exposed to large amounts of illicit cocaine within the very recent past"; accordingly, "a properly trained dog's alert to currency should be entitled to probative weight"; older cases deprecating value of the dog alert are unpersuasive); *United States v. $304,980 in U.S. Currency,* 2013 WL 785113, *6

(S.D. Ill. Mar. 1, 2013) (noting that scientific evidence and recent case law, including *$30,670*, have undermined the "once-popular theory" that all currency is contaminated and that dog sniffs are therefore unreliable); *United States v. $60,020.00 in U.S. Currency,* 2011 WL 4720741 (W.D.N.Y. Sept. 12, 2011) (relying on testimony of Dr. Furton to find that a dog alert means that currency was recently or shortly before packaging exposed to cocaine); *United States v. $20,330.00 in U.S. Currency*, 2006 WL 1185294, *5 (D. Col. 2006) (following *$30,670*; in accordance with the more recent cases based on the scientific evidence, a positive dog sniff has probative value and therefore creates a triable issue of fact; Claimant's motion for summary judgment denied).

Similarly, if there is a debate as to how a dog *should be trained,* or *what constitutes evidence of that training*, the court may consider expert testimony on those points. *See*, *e.g., United States v. $1,032,980.00 in U.S. Currency,* 855 F. Supp.2d 678, 697-705 (N.D. Ohio 2012).

But in a case like this one, where the general reliability of a dog alert is not an issue,[7] and there is general agreement as to what constitutes proof of adequate training, the only remaining issues are issues of fact: was the particular

---

[7] Claimant has not signaled any intent to challenge the reliability of dog alerts generally or to raise the contamination theory through expert witnesses or otherwise.  To the extent that Claimant raises the contamination theory obliquely and for the first time in reference to the deposition testimony of Off. McNerney, *see* Motion to Quash at 3 ("75 percent of all currency was contaminated by narcotics"), the Government has put Claimant on notice of its intent to rebut it with the scientific reports prepared by Dr. Kenneth Furton that have been accepted by other courts.

dog trained and certified, and has the dog proven to be reliable. As the following cases illustrate, no expert testimony is needed to establish those facts.

Three of these cases were decided by district courts in this circuit. In *United States v. $433,980 in U.S. Currency*, 473 F. Supp. 2d 672 (E.D.N.C. 2006), the Government sought the forfeiture of a large sum of currency seized from the claimant during a traffic stop. The court noted that much of the briefing in the case concerned the general reliability of dog alerts and the scientific evidence, based on expert testimony, refuting the theory that all circulating currency is tainted by narcotic odor. 473 F. Supp. 2d at 691. But the court found it unnecessary to enter into that debate or to rely on any expert testimony to determine that the dog alert had probative value. It was sufficient, the court said, that Government had presented factual evidence that *the particular dog* involved in the case was properly trained, certified and reliable. *Id.* ("Because there is separate evidence of the K-9's reliability in this particular case, the Court need not and does not take a position on either the currency contamination theory or the general probative value of K-9 drug sniffs.")

In *United States v. $78,850.00 in U.S. Currency*, 517 F. Supp. 2d 792 (D.S.C. 2007), the court adopted the reasoning in *$433,980* and held that the probative value of the positive dog alert was established by testimony regarding the training, certification and reliability of the particular dog, including the lack of false positives when tested against controlled samples of currency. 517 F. Supp.

10

2d at 800-01. Again, the case contains no reference to expert testimony.

Finally, in *United States v. $864,000 in U.S. Currency,* 2009 WL 2171249 (M.D.N.C. July 20, 2009), another district court, without considering any expert testimony, accepted the probative value of the positive alerts by two different drug dogs based solely on "affidavits documenting the training and reliability of both dogs." 2009 WL 2171249, at *3. That decision was affirmed by the Fourth Circuit. 405 Fed. Appx. 717, 2010 WL 5189543 (4th Cir. 2010).

Courts from outside the Fourth Circuit have taken the same approach.   In each case, the court accepted the probative value of the dog alert based on evidence regarding the training, certification and reliability of the particular dog, and without reference to any expert testimony. *See United States v. $132,245.00 in U.S. Currency,* ___ F.3d ___, 2014 WL 4099740 (9th Cir. Aug. 21, 2014) (affirming the probative value of a dog alert and holding that the Government may establish the credibility of an alert by a particular dog with a declaration from his handler that the dog does not alert to circulated currency unless it has been in "recent close proximity to a narcotic substance" that the dog has been trained to detect); *United States v. $21,175.00 in U.S. Currency*, 521 Fed Appx. 734, 740 (11th Cir. 2013) (relying on evidence of the dog's training and certification to establish her reliability); *United States v. $220,200 in U.S. Currency,* 2013 WL 1694814, *6 (S.D. Ohio Apr. 18, 2013) (granting Government's motion regarding admissibility of dog sniff evidence, and holding that whether the drug dog was

properly trained and certified is a factual issue that may be addressed on cross examination); *United States v. $22,000 in U.S. Currency,* 2010 WL 5426836, *4 (D. Neb. Nov. 16, 2010) (factors establishing forfeitability of currency at trial included drug dog's alert following a controlled experiment in which the dog first failed to alert to four empty boxes, and then alerted to one box after the currency was concealed within it).

### 2. *Daubert* does not apply to this case

Notwithstanding the case law on this point, Claimant takes the view that evidence of the probative value of a dog alert can only be presented through expert testimony that qualifies under the Supreme Court's decision in *Daubert.* Motion to Quash at 4. Unfortunately for Claimant, the courts that have addressed that argument have expressly rejected it. *See United States v. $369,980 in U.S. Currency,* 214 Fed Appx. 432, 435 (5th Cir. 2007); *United States v. Berrelleza,* 90 Fed. Appx. 361, 365 (10th Cir. 2004); *United States v. Fisher,* 2002 WL 563581, *1 n.2 (E.D. Pa. 2002); *United States v. Outlaw,* 134 F. Supp. 2d 807, 810 (W.D. Tex. 2001).

As the district court explained in *Outlaw,* the purpose of requiring an expert witness to satisfy the requirements set forth in *Daubert* is to ensure that the expert testimony meets the threshold of reliability necessary to allow the trier of fact to rely on that testimony to determine a fact. But this presupposes that the fact to be determined is one that can only be determined through scientific evidence that is

12

difficult for a court or other layperson to understand without the assistance of an expert. Where the issue to be determined is a simple question of fact, no expert is required and *Daubert* does not come into play. 134 F. Supp. 2d at 810.

So it is with testimony concerning the training of a drug dog. In this case at least, the issue is not whether there is a scientific basis for concluding that a positive alert by a properly trained drug dog has probative value. Rather, the only issue is whether the particular dog, K-9 Falco, was properly trained and reliable. That is a fact issue that can be determined through documents and the testimony of persons with personal knowledge of the training. Thus, *Daubert* does not come into play. *Id.*[8]

### 3. The Government has the right to interview and depose Ted Cox.

To be sure, Claimant is entitled to challenge the Government's proof that K-9 Falco was properly trained, certified and reliable. As the court suggested in *$220,200*, she may do so on cross examination at trial. 2013 WL 1694814, *6. Or she may present her own witnesses or rely on the documents that the

---

[8] Claimant has suggested that the cases declining to apply *Daubert* are distinguishable on the ground that they involved motions to suppress wherein the Government was only required to establish the probative value of the dog alert to establish probable cause. Motion to Quash at 4. But the distinction the courts have drawn between instances where expert testimony is required and instances where it is not have nothing do with the procedural context in which the issue arises or the standard of proof that applies. Rather, the distinction is between issues on which *scientific expertise* is required and issues on which it is not. The point is that the training, certification and reliability of a particular dog can be established as a factual matter without expert testimony whether the ultimate standard of proof is probable cause – as in the suppression cases – or preponderance of the evidence, as it is here.

Government has provided in discovery. The court – or perhaps the jury --- will then have to resolve the issue at the appropriate time.

But as in any civil case, the parties have the right to discover the facts relating to a contested factual issue prior to trial. Ted Cox is a fact witness with personal knowledge of the training, certification and reliability of K-9 Falco. He was the supervisor of the K-9 unit and is familiar with its training methods and record-keeping practices. He personally trained Falco's handler, Cpl. Lambert, when he was trained with another dog; he supervised Falco's training with his first handler, Off. Dix and he had responsibility for certifying the various K-9 teams. All of these facts are material to Claimant's challenge to K-9 Falco's training, certification and reliability. Accordingly, the Government has the right to depose him.

## B. The Government is entitled to depose Ted Cox regarding Claimant's Motion to Dismiss

In her Motion to Dismiss, Claimant has accused MTAP of falsifying the certification records of K-9 Falco, and has accused two Assistant U.S. Attorneys of breaching their duty of candor in failing to disclose all of the facts known to them about that matter. The issue has apparently attracted the attention of the media and has cast a shadow on the reputations of the individuals involved and the

agencies they represent.[9] Yet Claimant now asserts that it would be

"burdensome" to allow the Government to question a witness who may have

first-hand knowledge of the facts that are central to the merits of her motion.

Moreover, by designating the witness as her "expert," Claimant seeks to prevent

the Government from even conducting so much as a telephone interview with the

witness.

    To put it mildly, Claimant's position is absurd. She cannot on the one hand

file a motion accusing police officers of fraud and denigrating the reputations of the

prosecutors and then seek to prevent the Government from learning the facts of

the matter from a witness who may have first-hand knowledge on the ground that it

would be *inconvenient* for her counsel to take part in the process. Motion to Quash

at 6. What Claimant is trying to conceal in opposing the deposition of Ted Cox is

unclear, but that is precisely what civil discovery is designed to find out and the

Government has the right to use that process to do so regardless of how

inconvenient the search for the truth may be to the Claimant.

    It is undisputed that the MTAP officers did not have an original copy of the

certification of K-9 Falco when they were asked to produce it for purposes of civil

discovery. Instead, they apparently created a new copy of the certificate dated to

reflect the date of the original certification, which the U.S. Attorney's Office turned

---

[9] Undersigned counsel has been absent from the State of Maryland most of the time
since May and has not seen the press reports.

over to Claimant with a cover letter advising her counsel that the certificate was a reproduction. The parties, however, take dramatically different views of the significance of these facts.

Claimant maintains that the creation of the new certificate was a "fabrication" designed to perpetrate a fraud on the judicial process, whereas MTAP maintains that K-9 Falco was properly trained and certified prior to the seizure of the defendant currency in September 2013, and that the creation of the new certificate was simply an attempt to replace a lost document. Central to resolving this dispute are these questions: when were Falco and his handler trained, who trained them, was the team properly certified in September 2013, was there an original certificate that was lost, and was the new certificate merely a replacement for a lost document.

Ted Cox is likely to have first-hand knowledge of these facts. As mentioned earlier, he supervised the training of all of the handlers and dogs in the K-9 unit from 2009 through 2012, including the training of K-9 Falco with his first handler, Off. Dix. He was also responsible for the certification of the K-9 teams and for maintaining the training and certification records. Moreover, in his deposition, Off. McNerney noted that he had had conversations with Ted Cox specifically about alleged deficiencies in Falco's training with currency. Deposition at 15. Finally, Off. McNerney alleges that Mr. Cox was present when Cpl. Lambert referred to MTAP's certification process as "bogus." Deposition at 36-37.

16

The accusations Claimant has made in her Motion to Dismiss are serious. They call into question not only the probative value of an important piece of evidence but the reputations of numerous law enforcement officers and their agencies. It should be beyond question that all parties should have free access to all witnesses with knowledge of the underlying facts. Mr. Cox is undeniably such a witness. Claimant's attempt to prevent the Government from having access to him on the ground that it would be inconvenient belies her protestation that she is only interested in seeking the truth and playing by the rules.

**Conclusion**

For all of these reasons the court should deny Claimant's Motion to Quash and allow the Government to proceed with Mr. Cox's deposition. Moreover, the court should order that, notwithstanding Claimant's attempt to foreclose the Government's access to Ted Cox by designating him as an expert witness, the Government may contact Mr. Cox to interview him regarding the facts of this case as it may contact any other fact witness with or without the consent of Claimant or her counsel.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By: _____/s/_____

Stefan D. Cassella

Assistant United States Attorney
36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201
(410) 209-4800

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on August 25, 2014, a copy of the foregoing Opposition to Motion to Quash was filed via CM/ECF and served electronically on all parties via that system.


_____/s/_____
Stefan D. Cassella
Assistant United States Attorney