BSS:BANKS.Response toMTD.20141006

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | *     Civil No. JKB-13-3778 |
| $122,640 in United States Currency | * |
|  | * |

…ooOoo…

## GOVERNMENT'S RESPONSE TO CLAIMANT'S MOTION TO DISMISS

The United States of America, by its undersigned counsel, hereby submits its opposition to Claimant Samantha Banks's Motion to Dismiss.  Banks asserts that government counsel's production, in discovery, of an MTAP training certificate for a drug detection dog was a bad faith attempt to obscure a material fact, and asks this Court to dismiss the civil action.  The question before this Court is whether employees of the United States Attorney's Office attempted to perpetrate a fraud upon the Court by turning over a document in discovery, Exhibit 3, which was a re-creation of a missing original, and which *accurately* stated that the dog had been trained.  The answer is a resounding NO.  The claimant's Motion should be denied.

<u>Underlying Facts</u>

As this Court is aware, this is a civil forfeiture matter arising out of the seizure of $122,640 in currency from Jerry Banks's checked luggage at BWI on September 12, 2013.  The undisputed facts are that Mr. Banks's luggage attracted the attention of a TSA screener who opened it and discovered a large quantity of currency, bundled in stacks and packaged in heat-sealed shrink-wrap plastic. The screener referred the matter to law enforcement: the Maryland Transportation Authority Police (MTAP) and DEA.  The authorities questioned Mr. Banks at the airport about the currency, and he

indicated that it belonged to his wife, the claimant, and that he was transporting it in connection with a real estate transaction.

An MTAP canine team consisting of handler Corporal Joseph Lambert and K-9 Falco, was summoned to scan the currency. Falco, a drug dog, alerted to the presence of narcotics. Subsequent investigation discredited the real estate claim and showed no credible legitimate source for the money. The United States commenced this forfeiture action. The claimant, Mrs. Banks, filed her claim to the money.

## Discovery

Discovery followed, first as to standing, pursuant to Rule G(6), and subsequently generally. In late March 2014, the assigned Assistant United States Attorney, Stefan D. Cassella, Chief of the Asset Forfeiture and Money Laundering Section of the United States Attorney's Office, forwarded Mrs. Banks's discovery requests, which included interrogatories and requests for the production of documents, to a paralegal, Jennifer Stubbs. (Cassella Declaration¶¶ 8,9). Ms. Stubbs, following normal operating procedure, contacted the case agent and the law enforcement witnesses and began the process of gathering the necessary documents to respond to Mrs. Banks's discovery requests and to begin to draft responses to the interrogatories. (Stubbs Declaration ¶¶ 3,4).

Ms. Stubbs had to make repeated requests to MTAP and DEA for the necessary documentation. The case agent, TFO Kevin Davis, was out on bereavement leave and did not assist in assembling the relevant documents. On or about April 4, 2014, Ms. Stubbs went ahead and directly contacted the dog's handler, Corporal Lambert, for Falco's certification. (Stubbs Declaration ¶¶ 3,4). Lambert told her that the MTAP trainer who originally certified him and Falco, John McCarty, was on extended sick leave, but that he would try to get in touch with him and get a copy of the certification. Lambert explained that although Ms. Stubbs had requested

certifications for both himself and Falco, there would "just be one certification," since the handler and K-9 are trained and certified as a team. (Stubbs Declaration Attachment #2).

On April 7, 2014, Corporal Lambert sent Ms. Stubbs the certificate (attached to Claimant's Motion to Dismiss, and referred to hereafter as Exhibit 3). Corporal Lambert said nothing whatsoever to Ms. Stubbs as to how Exhibit 3 came to be created or whether there was a missing original. In fact, he included no text at all. (Stubbs Declaration Attachment # 3)

On the same day, April 7, 2014, Ms. Stubbs also spoke to Officer McCarty (whose signature appears on the training certificate), hoping to enlist him as the government's expert witness to support the K-9 scan. (Stubbs Declaration ¶ 5). Officer McCarty responded that he had suffered a back injury and would not be able to serve as an expert witness, but he suggested Officer Michael McNerney, who he said had trained Lambert and Falco as a team. Ms. Stubbs relayed the latter recommendation to AUSA Cassella who responded that Officer McNerney would likely have to serve as the Government's witness and that she should attempt to contact him. No one in the U.S. Attorney's Office had spoken to Officer McNerney at this point. (Stubbs Declaration ¶ 6, Cassella Declaration, ¶¶ 14, 24)

Later that week, Ms. Stubbs transmitted the documents she had gathered to AUSA Cassella for review, preparatory to sending them to claimant's counsel in discovery. She noted that she was still waiting for outstanding items from TSA, MTAP and DEA. She added,

> I also have not yet spoken directly with Mike McNerney (K-9 trainer), the expert you proposed using. But I have spoken with others who confirmed that he did train Falco. I put his name on the interrogatories as the proposed expert anyway. I have been calling him since Monday and he has not returned my calls. So I will need to speak to him and get all the pass fail records for Falco, etc.

3

(Stubbs Declaration Attachment # 4). The following day, April 11, 2014, Sergeant Hoyer, the supervisor of the MTAP K-9 unit, spoke to Ms. Stubbs by telephone. Hoyer advised her that the training certificate that had been provided on April 7 was not the original, and he wanted to make sure that she was aware of that. He further said that he could not locate Falco's score sheets. (Stubbs Declaration ¶ 7). AUSA Cassella instructed Ms. Stubbs to draft a letter to claimant's counsel relaying what Sergeant Hoyer had told her. Accordingly, she drafted a letter dated April 15, 2014, attached to the Motion to Dismiss and referred to hereafter as Exhibit 2, which stated *inter alia*

> …Please note the Narcotic Certification (bates number 0033) is a reproduction of the original certificate.
> ***
> Our collection and production of documents are ongoing, and we anticipate additional productions in the near future.

AUSA Cassella reviewed and signed the letter. (Cassella Declaration ¶15; Stubbs Declaration ¶ 8). Again, no one in the United States Attorney's Office had spoken to McNerney as of this date, *see* Cassella Declaration ¶ 20, and there has never been any assertion that the Training Certificate, Exhibit 3, is an authentic original.

Ms. Stubbs continued her efforts to obtain complete training records for Falco. A week later, Sergeant Hoyer transmitted Falco's 2012 and 2103 training records to Ms. Stubbs. She responded to him, "It looks like these only go up to March 2013, the K-9 scan didn't occur until September 2013 so we will at least need the records up until that month." (Stubbs Declaration ¶ 8 , Attachment # 5). There ensued communication back and forth between Hoyer and Stubbs in which she expressed some frustration at MTAP's inability to provide all the documentation, and in which Hoyer assured her that, although Falco's original handler, Officer Dix, had left the department, creating an interval of several months in 2013 when Falco had no training certification,

Falco was teamed up *and trained* with Lambert in July or August of 2013.  The following email exchange is an example:

Stubbs 5/5/2014:
>I understand you must be busy and I truly appreciate your efforts in responding to my calls and e-mails.  Please let me know if I should be speaking with someone else about these records or if you need a more formal request from us to get all these records together….If you have come to the conclusion that certain records are lost or missing please just let me know that now.  I know that you do not have the score card for Falco's training which was supposed to be with the certification, but it looks like we're missing a lot more than that.  I am getting K-9 records from other agencies that include a lot more documentation….Lastly, I still have not heard anything from McNerney.  If you would like for me to begin contacting him directly and leave you out of it, I am happy to do that.  I just assumed it would be easier for you to pass the information along to him.

Hoyer 5/7/2014:
>We have all of our records except the score sheet….[T]he only gap is from March 2013 until July 2013.  During that time Falco was not being used and was de-certified as his former handler left the department.  His training started again when Cpl Lambert became Falco's handler…. The contact is our former K9 Training Director Ted Cox.  He was the trainer at the time of Falco's initial training.  He can be reached at [telephone number].

(Stubbs Declaration; Attachment # 5).

Ms. Stubbs followed up by contacting Mr. Cox, the former trainer.  She spoke to him on May 7, 2014.  He informed her that no one at MTAP wanted to talk to her because they "didn't want to get involved."  He added that "they" had lost the original training certificate, "panicked" and Officer McCarty created Exhibit 3.  Cox also offered the opinion that Falco had not been adequately trained.  Ms. Stubbs relayed this information to AUSA Cassella.  (Stubbs Declaration ¶ 9; Stubbs Attachment 6; Cassella Declaration ¶ 18; Shea Declaration ¶¶ 6-9).  Cassella directed Ms. Stubbs to write a follow-up letter to claimant's counsel.  (Cassella Declaration ¶ 19).

Throughout May and into June 2014, Ms. Stubbs continued diligent efforts to gather all records of Falco's training as of September 2013.  As AUSA Cassella was absent from the office owing to his father's illness, AUSA Evan T. Shea, another attorney in the Asset Forfeiture and

5

Money Laundering section of the United State Attorney's Office, made some efforts to assist Ms. Stubbs in getting answers from MTAP. (Cassella Declaration ¶ 20; Shea Declaration ¶¶ 3,4, 12). To that end, they had Officer McNerney and Sergeant Hoyer come to the U.S. Attorney's Office to go over all the records that could be located and explain what, if anything, was missing. Because the documentation appeared to be in disarray, at the end of the meeting, AUSA Shea asked the officers whether they were concerned that the case was going to reflect poorly on the K-9 unit. (Shea Declaration ¶ 17). In response, McNerney brought up the re-created certification (Exhibit 3), and stated that the group should not have done that, but should have just said that the document was missing. (Shea Declaration ¶ 17). AUSA Shea asked Ms. Stubbs whether she and AUSA Cassella had disclosed to claimant's counsel the fact that the certification was re-created. (*Id.*) Ms. Stubbs affirmed that they had, but did not show AUSA Shea the transmittal letter (Exhibit 2). (Shea Declaration ¶ 18; Stubbs Declaration ¶ 11).

Ms. Stubbs finally received all extant records from Sergeant Hoyer showing that Falco had had training with Corporal Lambert in late July and August 2013, and she produced these to claimant's counsel under cover letter dated June 16, 2014, signed by AUSA Shea for the absent AUSA Cassella.

On June 20, 2014, claimant's counsel e-mailed AUSA Cassella suggesting dates to depose Officer McNerney, who had been identified as the government's expert witness on the dog scan. Cassella asked counsel to consent to an extension of the discovery deadline, as he had been away from the office attending to his father's illness for an extended period and could not be sure when he would be available. Counsel did not consent, and the deposition was set for July 9, 2014. (Cassella Declaration ¶ 23).

AUSA Cassella returned to the office the day before the deposition, and sat in on a preparatory interview with Officer McNerney.  (Cassella Declaration ¶¶ 25, 26).  Officer McNerney expressed reservations about the Falco-Lambert team, opining that while Falco would alert appropriately to the presence of controlled substances, he could not be sure that Falco was adequately trained not to give a false positive alert to "distracting" odors, such as that of latex gloves.  AUSA Cassella does not recall McNerney saying anything about the training certificate (Exhibit 3).  AUSA Shea recalls Officer McNerney saying at some point that they ought to have told the United States Attorney's Office simply that the document was lost, rather than recreate a new one.  (Shea Declaration ¶ 26). Officer McNerney never characterized the Training Certificate, Exhibit 3, as "fraudulent," or "misleading."  (Cassella Declaration ¶ 25, 26; Shea Declaration ¶ 26)

AUSA Cassella conferred with AUSA Shea, and they agreed that Cassella could not use Officer McNerney as the government's expert witness in this case.   (Cassella Declaration ¶ 26; Shea Declaration ¶ 27).  AUSA Shea indicated that he would inform claimant's counsel of the decision and cancel the deposition scheduled for July 9. (Shea Declaration ¶¶ 28,29).  As the Court now knows, claimant's counsel elected to depose McNerney as a fact witness and the deposition went forward.  At that deposition, McNerney testified that Exhibit 3 was not produced on the date it bore, August 16, 2013.  He had no knowledge whether the requisite underlying training had occurred or not, but he adopted Banks's counsel's characterization of the document as "fraudulent," insofar as it had been generated not in the ordinary course, but in connection with the ongoing litigation. He testified that he had advised his chain of command, Sergeant Hoyer, Lieutenant Frank, Captain Alton and the Assistant Attorney General who counseled MTAP, all of whom regarded the document as a "duplicate," and did not share his characterization of it as "fraudulent."  Exhibit 9 to Motion to Dismiss.

At no time did AUSAs Cassella or Shea ever believe or have reason to believe that Exhibit 3 was anything other than a recreation of a valid training certificate that had been lost. (Cassella Declaration ¶ 27; Shea Declaration ¶ 38). It is undisputed that Falco and his handler, Corporal Lambert, were in fact certified at the time of the search that led to this case. (Motion to Dismiss at 12).

Nevertheless, Mrs. Banks has seized on the characterization of the certificate as a "reproduction" in the cover letter, Exhibit 2, as grounds to try to get the forfeiture case dismissed.

Argument

Saying it does not make it so. Mrs. Banks's repeated and sanctimonious references to violations of the duty of candor do not add up to proof of any kind that the Assistant United States Attorneys acted with *any* motive to obscure or deceive. On the contrary, two business days after Sergeant Hoyer told paralegal Stubbs that the training certificate was not the original, she drafted, and AUSA Cassella signed, a letter to counsel advising him of such. Exhibit 2. Ms. Banks's manufactured horror at what she characterizes as a violation of the duty of candor in calling the document a "reproduction" is unwarranted.

There is no dispute that, at the time Falco scanned Jerry Banks's luggage in September 2013, he and his handler, Corporal Lambert, were adequately trained in accordance with MTAP's standard procedures. It appears that, at the time, because of turnover and injuries, the K-9 unit's recordkeeping was less than meticulous, which explains the lack of response that Ms. Stubbs experienced when she had to keep pressing for the relevant records. It is unfortunate that, when he made Exhibit 3, Training Officer McCarty failed to use a watermark or other means to identify the certificate as a duplicate, re-creation or reproduction, but it does not change the fact that what was being certified was accurate: Falco and Lambert had successfully completed narcotic certification.

Moreover, once Sergeant Hoyer advised Ms. Stubbs that the certificate was not the original, neither Ms. Stubbs, nor AUSA Shea nor AUSA Cassella ever sought to "pass the document off" as an authentic original.   There is absolutely no basis on which this Court should dismiss the case or impose any other kind of sanction.

The very case on which Banks relies, *United States v. Shaffer Equipment Co.*, 11 F. 3d. 450 (4th Cir. 1993), which was egregious by comparison, concluded that *dismissal was an unwarranted remedy.*  In that case, the EPA was seeking to recover the costs of clean-up of a hazardous waste site in West Virginia.  The EPA's on-site coordinator, one Caron, had repeatedly falsified his academic credentials and lied about his credentials under oath,[1] in the instant case as well as in others, and the government attorneys, *who had actual knowledge* that Caron had no degree, failed to notify the court or counsel of the fact, and proceeded with the case.  The Fourth Circuit adopted the district court's findings of fact that the attorneys had violated their duty of candor to the court, but, citing "the strong policy that cases be decided on the merits," 11 F. 3d at 462, held that the sanction of dismissal was too extreme and remanded for a lesser sanction.

The *Shaffer Equipment* court listed six factors to be considered in determining whether to impose the sanction of dismissal:

(1) the degree of the wrongdoer's culpability;

(2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients;

(3) the prejudice to the judicial process and the administration of justice;

(4) the prejudice to the victim;

---

[1] He later pled guilty to making material false declarations of 18 U.S.C. §1623.  *Shaffer Equipment* at fn.1.

    (5)  the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and

    (6)  the public interest.

*Id.*, 11 F. 3d at 462-63.  In this case, there is no "wrongdoer," no "victim," and absolutely no prejudice to the judicial process or the administration of justice.  What there is, *at most*, is imperfect recordkeeping by MTAP, a clumsy attempt to supply a missing document for litigation, a prompt revelation that the document was not an authentic original certificate, and a debate as to the meaning of the word "reproduction."  Although Banks tries to imply that AUSAs Cassella and Shea applied all manner of chicanery to pass off the document as authentic, there is not a shred of evidence to that effect.  On the contrary, the evidence is that Sergeant Hoyer told Ms. Stubbs about the document in a telephone call on April 11, 2014.  AUSA Cassella disclosed it in the letter to counsel the following Tuesday, April 15, 2014 (Exhibit 2).  When Hoyer and MeNerney discussed the document with AUSA Shea in the meeting on June 13, 2014, Shea promptly re-confirmed with Ms. Stubbs that appropriate disclosure had been made.   (Shea Declaration ¶ 18).

    A decision on the merits is precisely what Mrs. Banks seeks to avoid.  She has claimed that the $122,640 in plastic wrap in her husband's suitcase constituted her life's savings, which she entrusted to him to take to Baltimore to conduct some real estate transaction, or, alternatively, was to be used to pay her son's college tuition.  (Banks Affidavit, Exhibit 1 to Motion to Dismiss).  She has failed to produce any evidence that the money came from a lawful source, or for that matter, that either she or her husband even had possession of the currency at any time before Mr. Banks's ill-fated trip to Baltimore.  Government counsel is in the process of preparing a dispositive motion that will present all of the pertinent facts to the Court for a full airing on the merits.  The process should be allowed to proceed.

The Court has the inherent power to dismiss a case for a party's deceitfulness or abuse of the Court's processes "at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process" *Id.*, 11 F. 3d at 462, but the proof, before such drastic action, should be compelling. *See, e.g. Glynn v. EDO Corp.*, 2010 WL 3294347 (D. Md. 2010)(Judge Motz noting that the "clear and convincing" standard should be applied where "drastic" sanctions sought). Here, there is absolutely no proof that Ms. Stubbs, AUSA Cassella or AUSA Shea acted with *any* intent to deceive opposing counsel or anyone, let alone to undermine the integrity of the process. This Court should allow the process to go forward and should not be sidetracked by scurrilous and unfounded allegations.

    Respectfully submitted,

    Rod J. Rosenstein
    United States Attorney


By: _____/s/_____
    Barbara S. Sale
    Assistant United States Attorney
    Chief, Criminal Division

<u>Certificate of Service</u>

I HEREBY CERTIFY that this <u>6th</u> day of <u>October, 2014</u>, a copy of the foregoing Response to Motion to Dismiss was served via the court's CM/ECF system on counsel for the claimant, C. Justin Brown, Esq.

_____/s/_____
Barbara S. Sale