## DECLARATION OF STEFAN D. CASSELLA

I, Stefan D. Cassella, make the following declaration in support of the Government's Opposition to Claimant's Motion to Dismiss in *United States v. $122,620 in U.S. Currency,* No. 13-cv-03778-JKB.

1. I am an Assistant U.S. Attorney in the Office of the United States Attorney for the District of Maryland and since August 2009 have been the Chief of the Asset Forfeiture and Money Laundering Section in that Office. I have reviewed internal emails to refresh my recollection as to the sequence of events in this case.

2. Sometime after November 18, 2013, my office received a referral from the Drug Enforcement Administration regarding the seizure of $122,640 at BWI Airport. I directed my support staff to open a case file in the ordinary course of business, and assigned the case to myself.

3. On December 12, 2013, after reviewing the Declaration of DEA Task Force Office Kevin Davis, I filed a Verified Complaint for Forfeiture against the defendant currency.

4. On or about December 30, 2013, I received a phone call from the Claimant, Samantha Bell-Banks, who inquired as to how to respond to the Verified Complaint. I advised her that the instructions for responding were set forth in the Notice that was sent to her with a copy of the complaint, and that she was entitled to retain counsel to represent her in this matter.

5. The claimant filed her claim to the defendant property on January 16, 2014 and filed her answer to the complaint on February 3, 2014.

6. On February 4, 2014, I sent Claimant's counsel the Government's Rule G(6) Special Interrogatories which are routinely used to obtain information regarding the Claimant's standing in a currency seizure case.

7. During a conference call on February 19, 2014, the court agreed to rescind its proposed Scheduling Order regarding pre-trial discovery to allow the standing issue to be resolved first, and scheduled another conference call for April 22, 2014. The Court also sent the parties a new proposed Scheduling Order pursuant to which general discovery would begin on April 22, 2014 and conclude on August 21, 2014.

8. On March 21, 2014, I received a set of general discovery requests from Claimant's counsel which included interrogatories and requests for the production of

documents. Although these requests were submitted more than a month before discovery was to begin and were therefore premature, on March 24, 2014, I forwarded the requests to Jennifer Stubbs, a paralegal in the Asset Forfeiture and Money Laundering Section, with instructions to gather the requested evidence and to draft responses.

9. Referring discovery matters to the paralegals in the Asset Forfeiture and Money Laundering Section is routine, and the referral to Ms. Stubbs in this case was done in accordance with the normal procedure. I did not give Ms. Stubbs any special instructions in this case. Accordingly, in keeping with long-standing office procedure, Ms. Stubbs would have proceeded to contact the case agent and the witnesses in the case and endeavored to obtain the documents needed to respond to the discovery requests and to draft responses to Claimant's interrogatories.

10. It would have been unusual for me to have had any personal contact with the case agent or the witnesses in a case of this nature during the discovery process and I did not have any such contact in this case until I met Off. Michael McNerney on July 8, 2014. All communication with the witnesses regarding discovery issues, including the officers of the Maryland Transportation Authority Police, was between Ms. Stubbs and the witnesses.

11. On April 2, 2014, I sent an email to Ms. Stubbs asking how the discovery process was coming along. She responded that it was going well but that she had additional questions for the agents.

12. On April 7, 2014, Ms. Stubbs sent me a follow-up e-mail, regarding the necessity of identifying an expert witness and providing his CV in connection with the training and reliability of K-9 Falco. I advised her that it would be sufficient to identify the dog's trainer by the discovery deadline, and that she could provide his CV later once we had obtained it. She responded that she had spoken with the MTAP officer who had certified K-9 Falco and his handler, but that she did not yet have the name of the trainer.

13. On or about April 10, 2014, Ms. Stubbs advised me that she had learned that the person who trained K-9 Falco and his handler was Off. McNerney. I advised her that she should therefore identify Off. McNerney as the Government's expert witness.

14. On the same day, Ms. Stubbs sent me an email transmitting her draft of the discovery responses for my review. She noted that she was still awaiting some outstanding items from TSA, MTAP and DEA, including the pass-fail records for

Falco, and that she still had not spoken with Off. McNerney. She added that she had nevertheless listed McNerney as the Government's expert witness because she had confirmed with others at MTAP that he was the person who trained K-9 Falco.

15. On or about April 11, 2014, Ms. Stubbs advised me that she had obtained the Certificate certifying the training of K-9 Falco and his handler from MTAP, but that she had learned from another person at MTAP that the document was not the original. My recollection was that she first brought this to the attention of AUSA Evan Shea (which would have been the normal procedure in the Asset Forfeiture and Money Laundering Section with respect to discovery issues) and that AUSA Shea advised that we must relay that information to defense counsel. I agreed with that advice and instructed Ms. Stubbs to prepare a letter to Claimant's counsel relaying what she had been told about the Certificate. Ms. Stubbs then drafted a letter to Justin Brown informing him, as she had been told by MTAP, that the Certificate was a reproduction. She presented the letter to me for my signature and I signed it. The letter was sent to Mr. Brown on April 15, 2014.

16. The purpose of the April 15 letter was to relate to Claimant's counsel what Ms. Stubbs had been told by MTAP about the Certificate – *i.e.*, that although K-9 Falco had his handler had been trained and certified, the Certificate being produced in discovery was not the original document but rather was a reproduction. The letter accurately stated that fact. There was no intent to mislead Claimant's counsel or to conceal any additional facts. Indeed, having been advised earlier by Ms. Stubbs that she had spoken with the person who had certified K-9 Falco and his handler, I assumed that the original Certificate was lost or missing and that the document that was given to us by MTAP and that we were turning over to Claimant's counsel was a replica. That is still my belief.

17. On April 16, 2014, Ms. Stubbs advised me that Sgt. Hoyer from MTAP had advised her that she would have the pass-fail records for Falco within a week, but that Off. McNerney was away on training and therefore unavailable for her to interview.

18. On May 8, 2014, Ms. Stubbs sent me an email summarizing what she had learned the previous day. She wrote that she had been trying for a month to get the certification records for Falco and had been frustrated by MTAP's responses and her inability to contact Off. McNerney. She advised that Sgt. Hoyer had given her the name and number of a Ted Cox who he identified as the former trainer of Falco and that she had thereafter spoken with Cox on May 7. Ms. Stubbs then wrote, "I was told [by Cox] that the certificate we received for Falco was a reproduction (which we already knew and disclosed to Brown) but that because MTAP had lost the

certificate and score card that goes along with it, they basically panicked and created this new certificate which likely does not have the correct certification date on it." Ms. Stubbs concluded her email with this summary, "Here's what they know for sure: that Falco *was* in fact certified and underwent the initial basic training. McNerney was present for this. However, they do not have the records to back this up, aside from the bogus certificate. They do have some subsequent monthly training records but there are gaps in the months." She also indicated that she would continue her efforts to obtain the missing training records from MTAP.

19. On May 9, 2014, I responded to Ms. Stubbs that she should draft a follow-up letter to Claimant's counsel. I wrote, "As we discussed yesterday, the response re: the dog's training records will have to be that we are turning over what we have but acknowledge that the records are not as complete as they should be."

20. On May 10, 2014, I learned that my father probably had pancreatic cancer. When that diagnosis was confirmed on May 14, 2014, I arranged to take leave from the U.S. Attorney's Office under the Family Medical Leave Act and was absent from the Office for all but 11 of the next 94 days. The only days in which I was in the office were 5/22, 5/23, 5/30, 6/5, 6/6, 6/11, 6/12, 7/8-11. During this time, I received periodic updates on the status of the case from Ms. Stubbs but asked AUSA Evan Shea to help her with the discovery issues and he agreed to do so. My father died on August 10, 2014 and I returned to the Office on August 19, 2014. As of that date, the only person associated with this case with whom I had any personal contact or communication of any kind was Off. McNerney, who as described below, I met for the first and only time on July 8 and 9, 2014.

21. On May 21, 2014, Ms. Stubbs sent me an e-mail advising me that she had received additional training records for K-9 Falco from Sgt. Hoyer. She advised that there were still records missing, including the original of the certification, but that we did have "the one they recreated" and "now have the records showing that [Falco] was trained at that time."

22. On June 13, 2014, Ms. Stubbs sent me an email indicating that she and AUSA Shea had met with Sgt. Hoyer who produced numerous additional records.

23. On June 20, 2014, I received an email from Claimant's counsel suggesting dates for the deposition of Off. McNerney. I responded that I would like his consent to extend the discovery deadline because I was attending to my father's illness. On June 23, Counsel declined to consent and insisted on going forward with the deposition.

24. On July 4, 2014 I suffered an emergency and was hospitalized in Brigham and Women's Hospital in Boston. I had surgery on July 7, 2014 in Maryland and was able to return to the office on July 8. Prior to that time, I took no part in any of the preparation for the deposition of Off. McNerney.

25. On July 8, 2014, I sat in on the preparation session that AUSA Shea conducted with Off. McNerney. I recall Off. McNerney expressing concern with the adequacy of the training given to K-9 Falco by Off. Lambert. In particular, I recall Off. McNerney's stating that although Falco would accurately alert to the presence of controlled substances, he may not have been adequately trained to avoid alerting to "distracting" materials such as latex gloves.

26. I do not recall Off. McNerney saying anything about any problem with the training certificate for Lambert and Falco; nor do I recall his saying that Falco had not been certified. To the best of my recollection (I did not take notes), his concern was that he was unable to be certain that Falco would not give a false positive if latex gloves were used to handle evidence. Based on that information, AUSA Shea and I agreed that we could not use Off. McNerney as an expert witness for the Government. AUSA Shea responded that he would tell Claimant's counsel that we were not using McNerney as a witness and accordingly could cancel the deposition scheduled for July 9.

27. At no time did I believe or have any reason to believe that the Certificate produced in discovery to Claimant's counsel was anything other than a recreation of a valid training Certificate that had been lost.

I DECLARE UNDER PENALTY OF PERJURY PURSUANT TO TITLE 28 U.S.C. 1746 THAT THE FACTS SET FORTH HEREIN ARE ACCURATE, TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

/Stefan D. Cassella

Assistant U.S. Attorney